UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 24-47922 |
| HERITAGE COLLEGIATE APPAREL, INC., | Chapter 11 |
| | Judge Thomas J. Tucker |
| Debtor. | |
| _____/ | |
| HERITAGE COLLEGIATE APPAREL, INC., | |
| Plaintiff, | |
| v. | Adv. No. 25-4148 |
| VAULT 26 CAPITAL, LLC, | |
| Defendant. | |
| _____/ | |

**OPINION AND ORDER GRANTING, IN PART, DEFENDANT'S MOTION TO DISMISS COUNTS III, IV, AND V OF PLAINTIFF'S AMENDED COMPLAINT**

**A. Introduction**

This adversary proceeding presents a dispute between the Plaintiff, a Chapter 11 bankruptcy debtor, and a Defendant that provided financing to the Debtor pre-petition, under what are commonly known as merchant cash advance agreements.

Now before the Court is the Defendant's motion entitled "Defendant's Partial Motion to Dismiss Pursuant to Fed.R.Civ.P.12(b)(6)" (Docket # 19, the "Motion"). The Plaintiff filed a response objecting to the Motion (Docket # 23). The Defendant then filed a reply brief (Docket # 27). The Court held a hearing on the Motion on December 17, 2025, and took the Motion under advisement.

For the reasons stated below, the Court will grant the Defendant's Motion in part.

**B. Background**

The Motion seeks dismissal of three of the counts in the Plaintiff's five-count amended complaint (Docket # 10, the "Amended Complaint"), namely, Counts III, IV, and V. These counts concern three similar agreements, each entitled "Merchant Agreement," the Plaintiff made with the Defendant Vault 26 Capital, LLC, doing business as Vault Capital ("Vault Capital"), namely, (1) the agreement dated November 9, 2023 (the "First Vault Capital Agreement"); (2) the agreement dated November 14, 2023 (the "Second Vault Capital Agreement"); and (3) the agreement dated December 1, 2023 (the "Third Vault Capital Agreement").[1] The agreements are complex. The Court will describe only some of the features of these agreements, as relevant to the present Motion.

**1. The First Vault Capital Agreement**

According to the First Vault Capital Agreement, Vault Capital purchased $572,000.00 of the Plaintiff's future "Receipts," for a purchase price of $260,000.00.[2] The agreement defined "Receipts" as "all payments made . . . in the ordinary course of [the Plaintiff's] business[], for the payments due to [the Plaintiff] as a result of [the Plaintiff's] sale of goods or services . . . until the . . . 'Purchased Amount' [$572,000.00] has been delivered by or on behalf of [the Plaintiff] to [Vault Capital]."[3] In exchange for the purchase price, the Plaintiff gave Vault Capital access to its bank account, and permitted Vault Capital to debit that bank account each business day at the

---

[1] Copies of these agreements are attached to the Plaintiff's Amended Complaint (Docket # 10), as Exhibits A, B, and C, among other places in the record. This Opinion will refer to these agreements collectively as the "Vault Capital Agreements."

[2] *See* First Vault Capital Agreement at 1 (Docket # 10, Ex. A, at pdf p. 26).

[3] *Id.*

2

rate of $40,000.00 per week, until the $572,000.00 in future Receipts was paid to Vault Capital.[4]

The $40,000.00 weekly payment amount, defined as the "Specific Amount," was stated to be an estimated 15% of the Plaintiff's Receipts.[5]

The First Vault Capital Agreement stated that the transaction was not a loan, but rather a sale of future receipts. For example, on the first page of the agreement, the parties agreed that:

> [The Plaintiff] is selling a portion of a future revenue stream to [Vault Capital] at a discount, not borrowing money from [Vault Capital]. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by [Vault Capital].[6]

As another example, paragraph 1.10 of the "Terms and Conditions" in the agreement stated, in part:

> <u>1.10</u> **Sale of Receipts**. [The Plaintiff and Vault Capital] agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from [Vault Capital to the Plaintiff]. [The Plaintiff] agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. [Vault Capital] has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created.[7]

As a hedge against the possibility that a court might nonetheless view the agreement as a

---

[4] *See id.*

[5] *See id.* at 1, 2 ¶ 1.1 (Docket # 10, Ex. A, at pdf pp. 26, 27 ¶ 1.1). 15% was defined as the "Specified Percentage." *Id.* at 1 (Docket # 10, Ex. A, at pdf p. 26). The First Vault Capital Agreement stated that "Specific Amount" could be adjusted "so that the amount received by [Vault Capital] in the future more closely represents the Specified Percentage." *See id.* at 2 ¶ 1.4 (Docket # 10, Ex. A, at pdf p. 27 ¶ 1.4).

[6] *Id.* at 1 (Docket # 10, Ex. A, at pdf p. 26).

[7] *Id.* at 2 ¶ 1.10 (Docket # 10, Ex. A, at pdf p. 27 ¶ 1.10) (bold and underlining in original).

3

loan, rather than a true sale, the First Vault Capital Agreement stated the following about usury:

> In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, - it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that [Vault Capital] has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and [Vault Capital] shall promptly refund to [the Plaintiff] any interest received by [Vault Capital] in excess of the maximum lawful rate, it being intended that [the Plaintiff] not pay or contract to pay, and that [Vault Capital] not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by [the Plaintiff] under applicable law. As a result thereof, [the Plaintiff] knowingly and willingly waives the defense of Usury in any action or proceeding.[8]

In addition, the First Vault Capital Agreement granted a security interest to Vault Capital in, among other things,

> (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant, (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions . . . .[9]

Furthermore, the parties agreed, "that, if at any time there are insufficient funds in [the Plaintiff's] Account to cover [Vault Capital's] entitlements under this Agreement, [Vault Capital] is granted a further security interest in all of [the Plaintiff's] assets of any kind

---

[8] *Id.* (capitalization in original).

[9] "Vault Capital - Security Agreement and Guaranty" (Docket # 10, Ex. A, at pdf p. 29).

4

whatsoever, . . . ."[10]

   **2. The Second Vault Capital Agreement**

The Second Vault Capital Agreement is dated November 14, 2023, only five days after the date of the First Vault Capital Agreement. According to the Second Vault Capital Agreement, Vault Capital purchased $519,200.00 of the Plaintiff's future "Receipts," for a purchase price of $236,000.00.[11] In exchange for the purchase price, the Plaintiff gave Vault Capital access to its bank account, and permitted Vault Capital to debit that bank account each business day at the rate of $40,000.00 per week, until the $519,200.00 in future Receipts was paid to Vault Capital.[12]

The Second Vault Capital Agreement was in the same form as the First Vault Capital Agreement, and except for different numbers, it contained the same terms that were in the First Vault Capital Agreement, quoted above, including the language about usury and the security interest language.

   **3. The Third Vault Capital Agreement**

The Third Vault Capital Agreement is dated December 1, 2023, less than a month after the date of the First Vault Capital Agreement. According to the Third Vault Capital Agreement, Vault Capital purchased $195,000.00 of the Plaintiff's future "Receipts," for a purchase price of $125,000.00.[13] In exchange for the purchase price, the Plaintiff gave Vault Capital access to its

---

[10] *Id.*

[11] *See* Second Vault Capital Agreement at 1 (Docket # 10, Ex. B, at pdf p. 43).

[12] *See id.*

[13] *See* Third Vault Capital Agreement at 1 (Docket # 10, Ex. C, at pdf p. 60).

bank account, and permitted Vault Capital to debit that bank account each business day at the rate of $97,500.00 per week, until the $195,000.00 in future Receipts was paid to Vault Capital.[14]

The Third Vault Capital Agreement also was in the same form as the First Vault Capital Agreement, and except for different numbers, it contained the same terms that were in the First Vault Capital Agreement, quoted above, including the language about usury and the security interest language.

### 4. Vault Capital's proof of claim

Vault Capital timely filed a proof of claim in the bankruptcy case,[15] in the amount of $860,700.00.[16] As the basis of that claim, Vault Capital alleged "Sale of Future Receipts/ Ownership Interest in Receipts" and "Breach of Purchase Agreements."[17] The claim also stated that Vault Capital's claim is "secured by a lien on property" with a value in the full amount of the

---

[14] *See id.*

[15] Although it is titled "Proof of Claim" on the first page, consistent with Vault Capital having used Official Form 410, Vault Capital's claim is a "Claim of Ownership" as that phrase is used in the Court's bar date order filed in the main case on November 4, 2024 (Docket # 184 in Case No. 24-47922). That Order set a deadline of November 29, 2024 for filing a Claim of Ownership. *Id.* at 2. The deadline for filing other claims was March 17, 2025 for governmental units and December 16, 2024 for creditors other than governmental units. *See* Notice of Chapter 11 Bankruptcy Case (Docket # 14 in Case No. 24-47922) at 2 ¶ 7.

[16] Claim No. 67-1, filed November 29, 2024 in Case No. 24-47922, at 2. In this Opinion, the Court describes the filing and content of certain documents that were filed in the Plaintiff's bankruptcy case, including Vault Capital's proof of claim and the Plaintiff's confirmed liquidation plan. The Court may take judicial notice of these filings, and may consider them in ruling on the Defendant's Motion. *See Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) ("[T]he court may, in undertaking a [Rule] 12(b)(6) analysis, take judicial notice of 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.' *Golf Vill. North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (quoting *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020)).").

[17] Claim No. 67-1, filed November 29, 2024 in Case No. 24-47922, at 2.

claim, namely, "Accounts/Proceeds of Accounts/Purchased Accounts" and "Purchased Receipts," and that the lien is perfected by a "UCC Financing Statement; UCC 9-309."[18]

In a "Rider" attached to its proof of claim, Vault Capital alleged that under the three Vault Capital Agreements, Vault Capital purchased the future Receipts from the Plaintiff in the amounts stated in each agreement, and that the transactions were true sales, not loans, such that the purchased future Receipts are owned by Vault Capital, rather than the Plaintiff or the bankruptcy estate.[19] The Rider further stated, in relevant part,

> Vault Capital contends that . . . it is not a creditor, and the Purchase Agreements do not give rise to debts that are even subject to reorganization unless and until the Court determines that the transactions between the Debtor and Vault Capital are not true sales, which determination requires an adversary [proceeding] pursuant to Fed. R. Bankr. P. 7001(2). [citations omitted]. . . Vault Capital is filing a claim . . . to preserve its rights in the event the Court were to find the transaction is not a true sale.[20]

**5. The funds being held under the confirmed plan of liquidation in the Plaintiff's bankruptcy case**

The parties' dispute about Vault Capital's claim matters, because under the Plaintiff's confirmed Chapter 11 liquidation plan, the Plaintiff is holding enough in funds to pay up to the full amount of Vault Capital's claim, if and to the extent Vault Capital prevails in this adversary proceeding. The Plaintiff's confirmed liquidation plan is complicated. The Court will describe the features of the plan that are relevant here, plus other relevant background.

---

[18] *Id.*

[19] *See id.*, part 5 (Rider) at 1-2.

[20] *Id.* at 3. Vault Capital cited Bankruptcy Rule 7001(2), but that rule is now Fed. R. Bankr. P. 7001(b).

7

As the Plaintiff's Amended Complaint alleges, for many years before filing this bankruptcy case, the Plaintiff "sold University of Michigan branded clothing and other merchandise to retail customers through several brick and mortar and online outlets."[21] The Plaintiff was formerly named "M-Den, Inc.," and did business using the trade name "The M Den." Beginning in 2020, and in part because of the COVID pandemic, the Plaintiff began having significant financial problems,[22] which ultimately led to the Plaintiff filing its voluntary Chapter 11 bankruptcy petition on August 16, 2024.

The Plaintiff quickly sought and obtained authority from this Court to sell substantially all of its assets, on an expedited basis. After holding an auction sale, the Plaintiff obtained the Court's approval to sell its assets to the winning bidder, Rally House, Inc., for a total purchase price of $11,613,877 (the "Sale Proceeds"). The sale closed on September 24, 2024.[23]

The Plaintiff alleges that "[t]he Sale Proceeds were allocated as follows: (i) $3,863,877 to the Debtor's inventory, and (ii) $7,750,000 to the Debtor's remaining assets, which primarily included leasehold interests and goodwill."[24]

As ordered by this Court, the Plaintiff's assets were sold "free and clear of all liens, claims, encumbrances and interests of any kind[,]" with such interests transferred to the Sale

---

[21] Amended Complaint (Docket # 10) at ¶ 9.

[22] *See id.* at ¶ 14.

[23] *See id.* at ¶¶ 73-79. The Order approving the sale was entered on September 20, 2024 (Docket # 142 in Case No. 24-47922) (the "Sale Order").

[24] Amended Complaint (Docket # 10) at ¶ 77.

8

Proceeds.[25]

Ultimately, on June 10, 2025, the Plaintiff obtained confirmation of a plan of liquidation (the "Plan").[26] As the Plan described, there were six secured creditors claiming a lien in the Sale Proceeds, plus three merchant cash advance creditors (the "MCA Creditors") claiming to own part of the Sale Proceeds.[27] The three MCA Creditors, and their filed claim amounts, were (1) Elemental Capital, Inc., $4,596,132; (2) Vault Capital, $860,700; and (3) Family Funding Group, LLC, $380,000.[28]

Under the Plan, the Plaintiff was required to hold back from distributions to creditors a total of $5,836,832 of the Sale Proceeds, which equaled the total amount of the claims filed by the three MCA Creditors. The hold-back was to last until the outcome of adversary proceedings to be filed by the Plaintiff against the MCA Creditors. As the Plan says, the Plaintiff intended to seek a determination whether the MCA Creditors owned or had a valid lien in the Sale Proceeds. To the extent the Plaintiff succeeded in eliminating or reducing any MCA Creditor's claim that it owns or has a lien in the Sale Proceeds, that would free up part of the held-back funds, and permit that amount to be distributed to one or more of the secured creditors with allowed claims,

---

[25] *See id.* at ¶ 78; *see also* Sale Order (Docket # 142 in Case No. 24-47922) at 21 ¶ 15.

[26] The confirmation order was entered on June 10, 2025 (Docket # 296 in Case No. 24-47922). It confirmed, with modifications not relevant here, the Plaintiff's Fourth Amended Plan of Liquidation (the "Plan") (Docket # 275 in Case No. 24-47922).

[27] *See* Plan (Docket # 275 in Case No. 24-47922) at 7-8.

[28] *See id.* at 8; Claim No. 66-1 filed in Case No. 24-47922 (proof of claim filed by Elemental Capital, Inc.); Claim No. 65-1 filed in Case No. 24-47922 (proof of claim filed by Family Funding Group, LLC).

9

according to their priority.[29]

This adversary proceeding is one of the three filed by the Plaintiff against these MCA Creditors. The others are Adv. No. 25-4146, against Elemental Capital, Inc. and its alleged alter ego Redstone Advance, Inc., which remains pending; and Adv. No. 25-4147, against Family Funding Group, LLC, which concluded with a default judgment against Family Funding Group, LLC. In that default judgment, entered on September 18, 2025, among other things, this Court determined that Family Funding Group, LLC has neither an ownership interest nor a security interest in the Sale Proceeds.[30]

**C. Standards governing Rule 12(b)(6) motions**

In deciding the Motion, the Court has applied the standards it has previously held to be applicable to motions under Fed. R. Civ. P. 12(b)(6), which applies in this adversary proceeding under Fed. R. Bankr. P. 7012(b). Those standards were described in detail in this Court's opinion in *Wahrman v. Bajas* (*In re Bajas*), 443 B.R. 768, 770-72 (Bankr. E.D. Mich. 2011), and the Court incorporates by reference what it said in that opinion about the Rule 12(b)(6) standards.

**D. Discussion**

The Court will discuss each of the Amended Complaint counts which the Motion seeks to dismiss.

**1. Counts III and IV**

Initially, Count III and Count IV of the Amended Complaint will be discussed together. Count III is intended to support Counts IV and V of the Amended Complaint. Count III seeks a

---

[29] *See* Plan (Docket # 275 in Case No. 24-47922) at 8-9.

[30] Docket # 11 in Adv. No. 25-4147.

declaration that the three Vault Capital Agreements are "loan transactions," and therefore are "subject to the laws applicable to loans, including usury laws."[31] Count IV notes that these agreements all state that New York law governs, and alleges that these "[d]isguised [l]oan [a]greements" are void and unenforceable under New York law. This is so, Count IV alleges, because the agreements both charge disguised interest at a rate much higher than the maximum permitted by New York's criminal usury statute, which is 25% per annum.[32] *See* NY CLS Penal § 190.40. Count IV seeks the following relief:

> judgment in favor of [the Plaintiff] finding that: (i) the Disguised Loan Agreements are usurious and are void ab initio, (ii) Vault [Capital] is prohibited from collecting from [the Plaintiff] any amount that exceeds the amount it disbursed to [the Plaintiff], and (iii) [the Plaintiff] is entitled to all its other remedies.[33]

The Defendant argues that Counts III and IV must be dismissed, because they each seek affirmative relief of a form that is not permitted under New York's usury laws.

New York has both a civil usury statute, N.Y. Gen. Oblig. Law § 5-501, and a criminal usury statute, NY CLS Penal § 190.40. Unlike an individual, a corporation may not "interpose the defense of usury in any action" under the civil usury statute. But a corporation may interpose such a defense under the criminal usury statute. *See* N.Y. Gen. Oblig. Law §§ 5-521(1), (3).

Courts have interpreted these statutes to mean that a corporation can assert usury only under the criminal usury statute, and then only as a *defense* to an action seeking repayment of a loan, not as an affirmative claim for relief. As one court explained,

---

[31] *See* Amended Complaint (Docket # 10) at ¶ 98, and 21 ("Wherefore" clause).

[32] *Id.* at ¶¶ 106-112.

[33] *Id.* at 22-23 ("Wherefore" clause).

> The laws of the state of New York prohibit both civil and criminal usury. Corporations, however, cannot assert claims for civil usury.
>
> Corporations can, however, assert criminal usury as a defense. . . .
>
> Corporations are also barred from asserting affirmative claims for criminal usury; rather, they are limited to asserting criminal usury only as a defense to repayment. *See* N.Y. Gen. Oblig. Law § 5–521(3) (creating an exception to subsection (1) by permitting corporations to "interpose[] a *defense* of criminal usury as described in section 190.40 of the penal law.") (emphasis added). Consequently, corporations are barred from seeking "affirmative monetary relief" under Section 190.40.

*GMI Grp., Inc. v. Unique Funding Sols., LLC* (*In re GMI Grp., Inc.*), 606 B.R. 467, 482 (Bankr. N.D. Ga. 2019) (some citations omitted). Some cases have applied this rule strictly. For example, cases have held that a corporation may not file an action seeking declaratory relief based on New York's criminal usury statute. *E.g., Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 254 (S.D.N.Y. 2022)*; Streamlined Consultants, Inc. v. EBF Holdings LLC*, No. 21-CV-9528, 2022 WL 4368114, at *3-4 (S.D.N.Y. Sept. 20, 2022). And one case held that a debtor could not file an action seeking relief from a cognovit judgment based on criminal usury. *See Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*, 141 N.Y.S. 3d 319, 320 (N.Y. App. Div. 2021).

New York's highest court has held that when a corporation is successful in defending against a claim for repayment of a loan, based on the criminal usury statute, "the usurious loan transaction is deemed void and unenforceable, resulting in the uncollectability of both principal and interest." *Adar Bays, LLC v. GeneSYS IS, Inc.*, 37 N.Y.3d 320, 325-26 (N.Y. App. Div. 2021). "[T]he legislature intended for criminally usurious loans made to corporate borrowers to be void when a successful usury defense, based on the criminal usury rate, is raised." *Id.* at 333.

*See also Haymount Urgent Care PC*, 609 F. Supp. 3d at 254 ("Where the interest rate exceeds the criminal usury rate, a corporation may interpose an affirmative defense of usury and, if successful, obtain a declaration that invalidates the debt instrument ab initio.").

In the bankruptcy context, at least two courts have held that a corporate debtor may object to a proof of claim on the ground that the claim is based on a loan that violates New York's criminal usury statute. Those courts view such a claim objection as defending against a claim for repayment of a loan, so that the claim objection is permitted under New York usury law. *See GMI Grp., Inc.*, 606 B.R. at 497; *JLK Construction v. EIN Cap, Inc.*, Adv. No. 23-4031 (Bankr. W.D. Mo. June 6, 2024) at 30 n.37.[34] This Court agrees with those holdings. Vault Capital has cited no case holding otherwise, and actually agrees that a corporate debtor may object to a proof of claim, based on New York's criminal usury statute.[35]

The Plaintiff argues that Counts III and IV amount to an objection to the proof of claim filed by Vault Capital, based on the theory that the three Vault Capital Agreement transactions were disguised loans, not true sales, and that the loans violated New York's criminal usury statute. Vault Capital argues that these counts say nothing to indicate that they are a claim objection, and should not be viewed as such for that reason.

The Court agrees with Vault Capital on this point. The Amended Complaint mentions the fact that Vault Capital filed a proof of claim, and briefly describes the nature of that claim,[36]

---

[34] The *JLK Construction* case is unpublished. It was cited in the Defendant's Motion, and a copy of it is attached to the Motion as an exhibit (Docket # 19-2).

[35] *See* Def.'s Reply Br. (Docket # 27) at pdf p. 6.

[36] *See* Amended Complaint (Docket # 10) at ¶ 79.

13

but the Amended Complaint fails to plead an objection to that claim that satisfies the pleading requirements of Fed. R. Civ. P. 8(a), which applies in this adversary proceeding under Fed. R. Bankr. P. 7008.  These include the requirement in Civil Rule 8(a)(3) that a claim contain "a demand for the relief sought."  Nowhere in Counts III or IV, or elsewhere in the Amended Complaint, is there any statement that the Plaintiff is objecting to Vault Capital's proof of claim, nor is there any reference to 11 U.S.C. § 502(b), which provides the grounds for objecting to a claim.  And strictly speaking, the relief sought in Counts III and IV is both different from, and broader than, the relief the Plaintiff could obtain from a claim objection.

The relief the Plaintiff could obtain from an objection to Vault Capital's claim is, at most, the partial or entire disallowance of Vault Capital's claim.  Counts III and IV do not ask for that relief.  The relief sought in Count III is merely a declaratory judgment that the three Vault Capital Agreements "are loan transaction[s], despite any reference to the contrary, and are subject to laws applicable to loans, including usury laws."[37]  The relief sought in Count IV is, as quoted above,

> judgment in favor of [the Plaintiff] **finding that: (i) the Disguised Loan Agreements are usurious and are void ab initio**, (ii) Vault [Capital] is prohibited from collecting from [the Plaintiff] any amount that exceeds the amount it disbursed to [the Plaintiff], and (iii) **[the Plaintiff] is entitled to all its other remedies**.[38]

For these reasons, the Court must conclude that Counts III and IV of the Amended Complaint are different from, and more than, a mere objection to the claim filed by Vault Capital.  As a result, Count IV and Count III (to the extent it is intended to support Count IV) fail to state plausible claims against Vault Capital upon which relief can be granted.

---

[37] *Id.* at 21.

[38] *Id.* at 22-23 (emphasis added).

It would be fairly easy for the Plaintiff to amend its complaint, to expressly state in Count IV an objection to Vault Capital's claim, and to limit Count IV to that.  An objection to claim may be brought as part of an adversary proceeding.  Vault Capital does not dispute this, and the point is illustrated by the *GMI Group* case cited above.  In that case the Chapter 11 bankruptcy debtor included an objection to claim in a count in its adversary complaint, based on New York's criminal usury law, and the court refused to dismiss that count.  *See GMI Grp., Inc.*, 606 B.R. at 497.  And the court noted that

> [u]nder 11 U.S.C. § 502(b)(1), a claim may be disallowed where it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]"  Accordingly, the Debtor sets forth a plausible basis for objecting to Defendant's claim and seeking its disallowance on the ground that the underlying Agreement is criminally usurious.

*Id.*  Moreover, Vault Capital's own proof of claim stated that under "Fed. R. Bankr. P. 7001(2),"[39] an adversary proceeding would be necessary before the Court could "determine[] that the transactions between the Debtor and Vault Capital are not true sales[.]"[40]

The Plaintiff therefore can bring an objection to Vault Capital's claim as a count in this adversary proceeding.  That is so even though the proof of claim Vault Capital filed claims to *own* part of the Sales Proceeds that the Debtor is holding, and denies that there was any loan that must be repaid.  Under the Bankruptcy Code, a "claim" is defined as "a right to payment," *see* 11 U.S.C. § 101(5)(A), and Vault Capital's proof of claim asserts that, by virtue of its ownership

---

[39] Under former Rule 7001(2), which is now Rule 7001(b), an adversary proceeding includes, with exceptions not applicable here, "a proceeding to determine the validity, priority, or extent of a lien or other interest in property. . . ."  Fed. R. Bankr. P. 7001(b).

[40] [Vault Capital] Claim No. 67-1, filed in Case No. 24-47922, part 5 (Rider) at 3.

right, it has a right to a payment of $860,700.00 from the Sales Proceeds the Debtor is holding. Under the Bankruptcy Code, a "party in interest" may object to Vault Capital's claim, *see* 11 U.S.C. § 502(a), and the Plaintiff is such a "party in interest." Indeed, as described in Part B.5 of this Opinion, above, the Plaintiff is *the* party, designated by the confirmed Chapter 11 Plan, to file adversary proceedings to seek a determination whether Vault Capital and the other MCA Creditors own or have a valid lien in the Sale Proceeds.

For these reasons, the Court will dismiss Count IV of the Plaintiff's Amended Complaint, without prejudice to the extent of the leave the Court will grant the Plaintiff to file an amended complaint. And to the extent the declaratory judgment claim in Count III is intended to support Count IV, it too must be dismissed, also without prejudice. The Court will grant the Plaintiff leave to file an amended complaint that explicitly includes an objection to the proof of claim filed by Vault Capital, and that is consistent with this Opinion.

### 2. Count V

The declaratory judgment claim in Count III of the Amended Complaint also is intended to support Count V. Count V alleges that if Michigan law applies to the Vault Capital Agreements, rather than New York law, then those agreements violate Michigan's usury law.[41] (This count is pled in the alternative to Count IV, which is based on New York's usury law.) If that is so, the Plaintiff alleges, then under Michigan law, "Vault [Capital] is not entitled to collect from the Debtor anything over and above the money it actually disbursed to the [Plaintiff] under the Disquised Loan Agreements."[42] Count V seeks the following relief:

---

[41] *See* Amended Complaint (Docket # 10) at ¶¶ 114-119.

[42] *Id.* at ¶ 119.

16

25-04148-tjt    Doc 38    Filed 01/20/26    Entered 01/20/26 16:43:49    Page 16 of 20

> judgment in favor of [the Plaintiff] finding that: (i) the Disguised
> Loan Agreements are usurious, (ii) Vault [Capital] is prohibited
> from collecting from [the Plaintiff] any amount that exceeds the
> amount it disbursed to [the Plaintiff], and (iii) [the Plaintiff] is
> entitled to all its other remedies.[43]

Vault Capital argues, among other things, that the Plaintiff's alternative claim of usury under Michigan law in Count V is barred by Mich. Comp. Laws § 450.1275, which states, in relevant part:

> A domestic or foreign corporation, . . . may by agreement in
> writing, and not otherwise, agree to pay a rate of interest in excess
> of the legal rate and the defense of usury shall be prohibited.

*See generally Kleanthous v. First of Chelsea Corp.*, 507 N.W. 2d 2, 3 (Mich. Ct. App. 1993). The Court agrees with Vault Capital's argument, so Count V must be dismissed, with prejudice.

The Plaintiff's usury theory is that the Vault Capital Agreements were disguised loan agreements, and that each agreement required the Plaintiff to pay disguised interest, consisting of the difference between the "Purchase Price" (the amount advanced by Vault Capital to the Plaintiff) and the "Purchased Amount" of future Receipts (the total amount the Plaintiff was to pay Vault Capital under each agreement). Under the Plaintiff's usury theory, that disguised interest was at a rate far greater than the rate allowed by Michigan usury statutes.[44]

The Plaintiff is a corporation. *Under the Plaintiff's usury theory*, the Court must conclude that the Plaintiff agreed in writing with Vault Capital, in each of the Vault Capital Agreements, "to pay a rate of interest in excess of the legal rate," within the meaning of

---

[43] *Id.* at 23.

[44] Neither the Plaintiff's Amended Complaint nor the Plaintiff's brief opposing the present Motion cites any particular Michigan usury statute that allegedly was violated.

§ 450.1275. Under that statute, therefore, "the defense of usury" is "prohibited."

The Plaintiff's argument to the contrary is without merit. The Plaintiff argues that the Vault Capital Agreements each stated that the transaction was not a loan, and also stated that there was no interest. But this argument ignores the Plaintiff's own usury theory. The Plaintiff's usury theory asks the Court to ignore the statements in the Vault Capital Agreements that the transaction was not a loan and that no interest was being charged. The Court must do that in order to entertain the Plaintiff's usury theory. If the transactions under these agreements were loans, and if they required the payment of interest, as the Plaintiff necessarily contends, then the defense under Mich. Comp. Laws § 450.1275 applies. Alternatively, if the transactions were not loans, or if they did not require the payment of interest, then the Plaintiff has no usury claim under Michigan law to begin with. Either way, Plaintiff's usury claim under Count V fails.

For these reasons, the Court must dismiss Count V, with prejudice. And to the extent the declaratory judgment claim in Count III is intended to support Count V, it too must be dismissed, with prejudice.

### 3. Count III as a stand-alone claim

Vault Capital argues that if the Plaintiff's usury counts (Counts IV and V) are dismissed, then the declaratory judgment count (Count III) also must be dismissed, because it is not a stand-alone cause of action. The Plaintiff does not dispute this, and the Court agrees with Vault Capital on this point.

"The Declaratory Judgment Act [28 U.S.C. § 2201] is procedural in nature and 'does not create an independent cause of action' that can be invoked absent some showing of an articulated legal wrong." *Doe v. University of Dayton*, 766 F. App'x 275, 291 (6th Cir. 2019) (citation

omitted); *see also Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citation omitted) ("§ 2201 does not create an independent cause of action."); *see also Littler v. Ohio Ass'n. of Public School Employees*, 88 F.4th 1176, 1180 n.1 (6th Cir. 2023) (citations omitted) (explaining that "the Declaratory Judgment Act 'is only procedural, leaving substantive rights unchanged,'" and holding that the plaintiff's declaratory judgment request failed when her related substantive claim failed).

Because Count III is not a stand-alone count, the Court will dismiss it.

**E. Conclusion and Order**

For the reasons stated above, the Court now enters the following Order.

IT IS ORDERED that the Motion (Docket # 19) is granted in part, and denied in part, as provided in this Order below.

IT IS FURTHER ORDERED that:

1. Count IV of the Plaintiff's Amended Complaint (Docket # 10, the "Amended Complaint") (usury under New York law) is dismissed, with prejudice, except that the dismissal is without prejudice to the extent of the leave the Court will grant the Plaintiff to file an amended complaint, as stated in ¶ 4 below.

2. Count V of the Plaintiff's Amended Complaint (usury under Michigan law) is dismissed, with prejudice.

3. Count III of the Amended Complaint (declaratory judgment) is dismissed, without prejudice, except that Count III is dismissed with prejudice to the extent Count III is intended to support Count V of the Amended Complaint.

4. The Plaintiff is granted leave to file an amended complaint, which explicitly states an

19

25-04148-tjt    Doc 38    Filed 01/20/26    Entered 01/20/26 16:43:49    Page 19 of 20

objection to the proof of claim filed by Vault Capital, and which is consistent with the Court's Opinion, above.  Any such amended complaint must be filed no later than January 30, 2026.

**Signed on January 20, 2026**  /s/ Thomas J. Tucker
**Thomas J. Tucker
United States Bankruptcy Judge**